UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN LOCKETTE,

        Plaintiff,

  v.

MORGAN STANLEY & CO., LLC,
MORGAN STANLEY SMITH BARNEY
LLC, AND MORGAN STANLEY,

        Defendants.

Case Action No. 18-cv-00876-JGK

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | There was Adequate Notice and Assent to Form a Valid Agreement | 1 |
| | | 1. Plaintiff Received, had Notice of, and Assented to the CARE Arbitration Agreement | 2 |
| | | 2. Plaintiff's Cases Are Inapposite | 7 |
| | B. | The Purported Classwide Opt-Outs Are Irrelevant and Ineffective | 8 |
| | C. | The Arbitration Agreement is Supported by Consideration | 10 |
| | D. | The Arbitration Agreement is Enforceable Under Controlling Precedent | 10 |
| III. | CONCLUSION | | 10 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Campbell v. Gen. Dynamics Gov't Sys. Corp.*,
    407 F.3d 546 (1st Cir. 2005) ................................................................................5

*Clearfield v. HCL Am. Inc.*,
    2017 WL 2600116 (S.D.N.Y. June 15, 2017) ......................................................3

*Frazier v. Morgan Stanley & Co.*,
    No. 16-cv-00804, Dkt. 1 (S.D.N.Y.) .....................................................................9

*Gupta v. Morgan Stanley Smith Barney, LLC*,
    2018 WL 2130434 (N.D. Ill. May 9, 2018) ......................................................3, 4

*Hudyka v. Sunoco, Inc.*,
    474 F. Supp. 2d 712 (E.D. Pa. 2007) ...................................................................5

*Jaffe v. Morgan Stanley & Co.*,
    2008 WL 346417 (N.D. Cal. Feb. 07, 2008) ........................................................8

*Kindred Nursing Ctrs. Ltd. P'Ship. v. Clark*,
    137 S.Ct. 1421 (2017) ......................................................................................7, 8

*Oppenheimer & Co. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995) ...................................................................................2

*Pelligrino v. Morgan Stanley Smith Barney LLC*,
    2018 WL 2452768 (S.D.N.Y. May 31, 2018) ..............................................2, 3, 6

*Quiles v. Fin. Exchange Co.*,
    879 A.2d 281 (Pa. Super 2005) ............................................................................2

*Raniere v. Citigroup, Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011) ..................................................................6

*Rightnour v. Tiffany & Co.*,
    239 F. Supp. 3d 744 (S.D.N.Y. 2017) ..................................................................7

*Schmell v. Morgan Stanley & Co., Inc.*,
    2018 WL 1128502 (D.N.J. Mar. 1, 2018) ............................................................7

*Software for Moving, Inc. v. La Rosa Del Monte Express, Inc.*,
    2009 WL 1788054 (S.D.N.Y. June 23, 2009) .................................................1, 2

*Specht v. Netscape Comm'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002)......................................................................................................2

*Weinstein v. Jenny Craig Ops.*,
    17 N.Y.S.3d 407 (N.Y. App. Div. 2015) ................................................................................9

*Weiss v. Macy's Retail Holdings, Inc.*,
    2018 WL 3409143 (2nd Cir. July 12, 2018)..........................................................................4

Defendants submit this Reply Memorandum in further support of their Motion to Compel Arbitration.[1]

## I. INTRODUCTION.

As Defendants demonstrated in their opening brief, Plaintiff received and had notice of, assented to, and is bound by the CARE Arbitration Agreement. Plaintiff's Opposition fails to offer any persuasive basis for this Court to deny Defendants' motion and compel arbitration. Instead, Plaintiff raises disingenuous and meritless arguments based on cases and rules that either refute Plaintiff's own arguments or are clearly inapposite. Defendants therefore ask the Court to apply the controlling legal standards and compel arbitration of Plaintiff's claims.

## II. ARGUMENT.

### A. There was Adequate Notice and Assent to Form a Valid Agreement.

Defendants have established by a preponderance of the evidence that Plaintiff entered into a valid arbitration agreement by continuing his employment after receiving the May 20, 2015 email notice of the expansion of the CARE Arbitration Program ("CARE email") without opting out. Dkt. 12 at 14-21. While Plaintiff argues that Defendants have the higher burden of establishing Plaintiff's "unambiguous assent" (Dkt. 26 at 10), as this Court has recognized, "an agreement to arbitrate need only be proven by a preponderance of the evidence," and Plaintiff's suggested "higher standard … is preempted by the FAA." *Software for Moving, Inc. v. La Rosa*

---

[1] All capitalized terms and abbreviations used herein have the meanings ascribed to them in Defendants' opening brief.

1

*Del Monte Express, Inc.*, 2009 WL 1788054, at *7 (S.D.N.Y. June 23, 2009); Dkt. 12 at 14-16.[2] Where, as here, "the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing arbitration may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).[3]  Plaintiff has not submitted evidentiary facts sufficient to create a genuine dispute concerning any material fact.

      **1.**      **Plaintiff Received, had Notice of, and Assented to the CARE Arbitration Agreement.**

Defendants' evidence establishes that "[t]he CARE Arbitration Agreement was delivered to and received by Plaintiff." Dkt. 12 at 16-19; Dkt. 14, ¶¶ 4-5.  Under applicable law, Plaintiff's blanket denial of receipt, without more, is insufficient to overcome the presumption of receipt. Dkt. 12 at 16-18 & n. 15; *Pelligrino v. Morgan Stanley Smith Barney LLC,* 2018 WL 2452768, at *4 (S.D.N.Y. May 31, 2018) ("Plaintiff's assertion that he never saw the [CARE] email [was]

---

[2] Plaintiff's reliance on *Specht v. Netscape Comm'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) and *Quiles v. Fin. Exchange Co.*, 879 A.2d 281 (Pa. Super 2005) is misplaced as they were decided under state law without considering FAA preemption.

[3] New York law governs the contract formation issue here because New York has the greatest interest in and connection to, and is the "center of gravity" for, this litigation, with Pennsylvania being the only viable alternative.  *See* Dkt. 12 at 10-14 & n.11.  Plaintiff admits this Court may apply New York law in deciding the contract formation issue, and while Plaintiff suggests that the Court may also consider Pennsylvania and New Jersey law (Dkt. 26 at 10), New Jersey law does not apply because New York, not New Jersey, has "the most significant relationship to the transaction and the parties" and is the "center of gravity" for this litigation. Dkt. 12 at 10-14.

insufficient to rebut the presumption that he received it"); *Clearfield v. HCL Am. Inc.*, 2017 WL 2600116 (S.D.N.Y. June 15, 2017) ("[Plaintiff's] denial is insufficient to rebut the presumption that she received the e-mail"). Thus, the CARE email provided adequate notice even if Plaintiff denies seeing or reading it. Dkt. 12 at 16-19 & n. 15; *Pelligrino*, 2018 WL 2452768, *4.[4]

Even if Plaintiff's self-serving denial was sufficient to overcome the presumption of receipt – which it is not – Defendants have proven actual receipt by providing a copy of the CARE email that was *received* by Plaintiff and declarations attaching that email and describing how the declarant determined that the e-mail was received by Plaintiff. Dkt. 14, ¶ 5; 14-2; Declaration of Keith Waggoner ("Waggoner Decl."), ¶¶ 3-7 & Ex. 1. Those declarations establish that the email was addressed and delivered to Plaintiff's email account using his assigned email address, arrived and was located in and was produced from Plaintiff's email account (and not his SPAM folder), and did not trigger a "bounceback" email or other response indicating that it was undeliverable or not delivered. Dkt. 14, ¶ 5; 14-2; Waggoner Decl., ¶¶ 3-7 & Ex. 1.[5] Thus, there can be no genuine dispute as to Plaintiff's receipt of the CARE email.

---

[4] The CARE email also provided inquiry notice of the expansion of mandatory arbitration under the CARE Arbitration Program by explaining that "all covered claims will be resolved through …arbitration…as more fully described in the Arbitration Agreement" and emphasizing the importance of reading that Agreement, which was accessible by clicking on a link in the email. *Id.* at 18-19.

[5] Plaintiff's reliance on *Gupta v. Morgan Stanley Smith Barney, LLC* is, therefore, misplaced. There, the Court, applying Illinois law, found that a genuine dispute over a material fact existed because "[n]either affidavit…attaches the documentation from which the affiants determined that

3

*Weiss v. Macy's Retail Holdings, Inc.*, 2018 WL 3409143, *3 & n.1 (2nd Cir. July 12, 2018) (summary order) (more than mere denial of receipt is required to rebut presumption of receipt and create a genuine dispute).  Plaintiff has not submitted evidence sufficient to create a genuine dispute concerning Defendants' evidentiary showing in this case.

Contrary to Plaintiff's argument, the Agreement and its terms, the binding contractual nature of the Agreement, and the scope and mandatory nature of arbitration under the Agreement were effectively communicated in the CARE email and the Agreement and other documents accessible via links in the email.  Dkt. 12 at 6-7; Dkt. 14, ¶¶ 6-7, 13-14.  There is nothing "misleading" or "confusing" about the email (which clearly explained that "all covered claims … will be resolved through … binding arbitration" and that continued employment without opting out would constitute acceptance) or the Arbitration Agreement.  *Id.;* Dkt. 14-2, 14-3; *Weiss*, 2018 WL 3409143, *3.[6]

Plaintiff's argument that the manner in which the expansion of the CARE Arbitration

---

the e-mail was received by Gupta or describes how that determination was made."  *Gupta*, 2018 WL 2130434, at *3 (N.D. Ill. May 9, 2018).  The same cannot be said here.

[6] There is also nothing confusing about the Arbitration Agreement's references to the FINRA and JAMS Arbitration Rules or the Arbitration Rules themselves.  In any event, the Arbitration Agreement expressly states that, "[t]o the extent any of the terms, conditions or requirements of this Arbitration Agreement conflict with…the JAMS Arbitration Rules or FINRA Arbitration Rules, the terms, conditions or requirements of this Arbitration Agreement shall govern."  Dkt. 14-3 at 3.

Program was communicated was somehow improper or insufficient is baseless.[7]  Plaintiff does not cite any cases holding that providing notice of a new arbitration policy with an opt-out option by a single email is inadequate.  And the two cases Plaintiff relies upon in arguing that Defendants failed to provide adequate notice are inapposite because there, unlike here, the emails announcing the arbitration programs failed to state that arbitration is mandatory, that arbitration is the exclusive dispute resolution process, or that continued employment would constitute acceptance, and neither included an opt-out option.  *Hudyka v. Sunoco, Inc.*, 474 F. Supp. 2d 712, 714-17 (E.D. Pa. 2007); *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 557-58 (1st Cir. 2005).

Defendants' use of email and intranet postings to communicate information about the expansion of the CARE Arbitration Program was consistent with and even more robust than how it customarily communicates important and time-sensitive information about HR policies.  Dkt. 14, ¶ 16.[8]  While Plaintiff is correct that there are other ways in which Defendants "could have" delivered the CARE email, he cites no authority requiring Defendants to use any of Plaintiff's

---

[7] Any issue concerning Defendants' right to change the CARE Arbitration Program is governed by the Changes to CARE provision in the CARE Guidebook.  Defendants complied with that provision by providing 30 days' notice of the changes to CARE.  Dkt. 14, ¶¶ 3-7; 14-1.

[8] Plaintiff cites no authority that binds an employer to use a single form of notice when communicating information about policies or renders the use of different forms of notice at different times inadequate.

5

suggested alternative methods of delivery.  Dkt. 26 at 11.[9]

While Plaintiff denies reading the information and reminder notice about the expansion of the CARE Arbitration Program posted on me@ms and participating in the Team call where it was discussed,[10] those denials do not create a genuine issue of *material* fact because the CARE email provided Plaintiff with adequate notice of the expansion of mandatory arbitration under the CARE Arbitration Program and no further notice was required.  Dkt. 12 at 16-19.  The me@ms postings and Team call were simply additional means through which Plaintiff received notice.  Plaintiff assented to the Arbitration Agreement by continuing employment after receiving the CARE email without opting out, and nothing more is required to evidence his assent.  *Id.*; *See Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 307 (S.D.N.Y. 2011) ("Raniere continued her employment after receipt of [a single] email with the link to the …Arbitration Policy.… [T]hese facts [are] sufficient to evidence Raniere's assent to the…Policy").

---

[9] Plaintiff's argument that the CARE email provided inadequate notice simply because it was delivered on the Wednesday before the Memorial Day holiday is both baseless and disingenuous, as Plaintiff admits that he worked that day and the next two calendar days and he was actively sending and receiving emails during those days.  Dkt. 27, ¶ 12; Dkt. 12 at n. 13; Dkt. 13-3; Waggoner Decl. ¶ 8; *Pelligrino*, 2018 WL 2452768, at *4.

[10] Plaintiff's challenge to Drever's list of subjects to discuss during the May 22, 2015 Team call is a meritless diversion.  As Drever attested, he prepared this list of subjects to discuss in preparation for the call.  Dkt. 13, ¶ 25; *see also* Supplemental Declaration of Scott Drever, ¶¶ 3-7.

### 2. Plaintiff's Cases Are Inapposite.

Plaintiff's reliance on *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744 (S.D.N.Y. 2017) and *Schmell v. Morgan Stanley & Co., Inc.*, 2018 WL 1128502 (D.N.J. Mar. 1, 2018) is misplaced as both cases are inapposite. In *Rightnour*, unlike here, (1) nothing in the employer's email announcing the new dispute resolution program stated either that the program provided for binding and mandatory arbitration or that continued employment would constitute acceptance; and (2) the plaintiff explicitly rejected the arbitration agreement in an email to her supervisor one day after she opened and read the agreement, which the Court found constituted "objective manifestation" of her intent not to be bound. 239 F. Supp. 3d at 751-52. Here, Plaintiff neither explicitly rejected the CARE Arbitration Agreement during his employment nor opted out or otherwise notified Defendants that he intended to not be bound.

In *Schmell*, the Court applied New Jersey law, which it described as (1) requiring employers to show that an employee "actually intended to waive his statutory rights" by "explicitly indicat[ing] his … agreement to [arbitration]" and (2) permitting a plaintiff to create a triable issue of fact as to whether he was on notice of an agreement he actually received by simply denying "recollection of receiving, viewing or opening" the email with the agreement. 2018 WL 1128502, at *2-3. However, New Jersey law does not apply here. Under the applicable legal standard, a denial of receipt cannot overcome the presumption of receipt applicable here, and any requirement that employers show that an employee "actually intended to waive his statutory rights" by "explicitly" agreeing to arbitration is preempted by the FAA. *See supra* at 1-2 & n. 2; Dkt. 12 at 14-15; *Kindred Nursing Ctrs. Ltd. P'Ship. v. Clark*, 137 S.Ct. 1421 (2017) (FAA preempts state rule requiring heightened standard to waive "right to go to

7

court and receive a jury trial").

In sum, Plaintiff received and had adequate notice of, assented to, and is bound by the CARE Arbitration Agreement. Thus, the CARE Arbitration Agreement should be enforced according to its terms, as it has been by several courts. Dkt. 12 at 20.[11]

**B.     The Purported Classwide Opt-Outs Are Irrelevant and Ineffective.**

Plaintiff's argument that he is not bound by the CARE Arbitration Agreement because of the purported class-wide opt-outs by class counsel in *Jaffe* and two other actions (Dkt. 26 at 7, 19) is clearly wrong because (1) Plaintiff was not a member of the certified class in *Jaffe*[12] or the

---

[11] Plaintiff's arguments concerning the CARE mediation program are both (1) irrelevant to the Court's determination of whether Plaintiff had adequate notice of, assented to, and is bound by the CARE Arbitration Agreement (Dkt. 12 at 10, 14-21) and (2) meritless because that mediation program is voluntary and limited to claims where, unlike here, both parties agree to mediation under CARE. Dkt. 28-8 at 6-7.

[12] The class certified in *Jaffe* was limited to "African Americans … employed as Financial Advisors ["FA"] or Registered [FA] Trainees in the Global Wealth Management Group of Morgan Stanley & Co. Incorporated or its predecessor, Morgan Stanley DW Inc. … between October 12, 2002 and December 3, 2007[.]" *Jaffe v. Morgan Stanley & Co.,* 2008 WL 346417, at *3 (N.D. Cal. Feb. 07, 2008). Plaintiff was not and does not claim to have been ever employed as an FA or a Registered FA Trainee in the Global Wealth Management Group of Morgan Stanley or its predecessor, Morgan Stanley DW Inc. at any time. Dkt. 27, ¶¶ 4-5.

8

other actions;[13] (2) Plaintiff does not allege that he requested or authorized class counsel in any of those cases to opt-out on his behalf; (3) the purported classwide opt-outs do not comply with the requirements for an effective CARE Arbitration Program Opt-Out Form and are dated and were submitted over three months after Plaintiff's deadline to opt-out (Dkt. 14, ¶¶ 7, 12-14; Dkt. 14-2; Dkt. 14-5; Dkt. 28-5; Dkt. 28-6; Dkt. 28-7); and (4) Plaintiff cites no authority that any counsel's purported classwide opt-out was valid.

Plaintiff's reliance on *Weinstein v. Jenny Craig Ops.*, 17 N.Y.S.3d 407 (N.Y. App. Div. 2015), is likewise misplaced because, unlike *Weinstein*, at the time the new CARE Arbitration Agreement was announced in May 2015, this action had not been commenced and Plaintiff was not a member of any then pending certified or putative class action. Therefore, unlike *Weinstein*, there is no possible basis for inferring that the new Arbitration Agreement was implemented in response to this litigation or to preclude Plaintiff from participating in any then pending class action. *Id.* ("the [trial] court properly exercised its discretion by drawing the inference that the agreements had been implemented in response to this litigation and to preclude putative class members" from participating therein).

---

[13] Plaintiff was not and does not claim to have been a member of either the *Augst-Johnson* class, which was limited to female FAs (Dkt. 28, ¶ 11) or the putative class in *Frazier*, which is limited to African-Americans who, unlike Plaintiff, "worked for Morgan Stanley as FA Trainees or FAs." *Frazier v. Morgan Stanley & Co.*, No. 16-cv-00804, Dkt. 1 (S.D.N.Y.).

9

    **C.**    **The Arbitration Agreement is Supported by Consideration.**

As explained in Defendants' opening brief, continued employment and mutuality each serve as legal consideration under controlling law and are present in this case, and Defendants' agreement to arbitrate is in no way illusory. Dkt. 12 at 20-21.

    **D.**    **The Arbitration Agreement is Enforceable Under Controlling Precedent.**

Plaintiff's contention that FINRA Rules bar enforcement of the CARE Arbitration Agreement is baseless. As Plaintiff admits, FINRA Rules do not require discrimination claims to be arbitrated at FINRA. Dkt. 26 at 2. And Plaintiff's own exhibit concedes that, under controlling Second Circuit authority, FINRA Rules purporting to require arbitration in a FINRA forum "can be waived in a predispute agreement to arbitrate in a private, non-FINRA arbitral forum." Dkt. 28-14 at 6 & n. 19 (citing *Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249 (2d Cir. 2016). The CARE Arbitration Agreement – a pre-dispute agreement to arbitrate in a private, non-FINRA arbitral forum (JAMS) – is therefore valid and enforceable under controlling Second Circuit precedent.

**III.**    **CONCLUSION.**

Plaintiff received, had notice of, assented to, and is bound by the CARE Arbitration Agreement. Defendants respectfully request that the Court compel arbitration of Plaintiff's claims and stay these proceedings.

Dated:  July 27, 2018	Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/   *Andrew J. Schaffran*                  .
          Andrew J. Schaffran
          Brendan T. Killeen
          Nicole M. Zito

101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
andrew.schaffran@morganlewis.com
brendan.killeen@morganlewis.com
nicole.zito@morganlewis.com

*Attorneys for Defendants*

## **CERTIFICATION OF COMPLIANCE**

      I hereby certify that that this Reply Memorandum of Law, not including the cover page, certification of compliance, table of contents, and table of authorities contains 2,741 words.  I further certify that this Reply Memorandum of Law complies with Section 2.D of the Individual Practices of Judge John G. Koeltl.

                                                              */s/ Andrew J. Schaffran*
                                                                Andrew J. Schaffran

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on July 27, 2018, via the Court's ECF/CM system.

/s/ *Andrew J. Schaffran*
Andrew J. Schaffran
